1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE GASTEAZORO-PANIAGUA,

                                    Petitioner,

        v.

MARGARET GILBERT,

                                    Respondent.

No. 3:17-cv-05787 BHS-TLF

**REPORT AND RECOMMENDATION
Noted for: June 29, 2018**

Petitioner Jose Gasteazoro-Paniagua was convicted by jury verdict of attempted murder and unlawful possession of a firearm. Dkt. 8, Respondent's Submission of Relevant State Court Record, Exhibit 1. In his 28 U.S.C. § 2254 petition, Mr. Gasteazoro-Paniagua contends that the trial court violated his Fifth Amendment right to counsel, his Sixth and Fourteenth Amendment right to effective counsel, and his Sixth Amendment right of confrontation. Dkt. 1.

Gasteazoro-Paniagua has not shown, with respect to any of his claims, that the last reasoned decision of the state court was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Accordingly, the undersigned recommends that the Court deny the petition and dismiss the action with prejudice and without an evidentiary hearing.

### STATEMENT OF FACTS

The Washington Court of Appeals, Division II, summarized the facts underlying GP's conviction as follows:

REPORT AND RECOMMENDATION - 1

On December 30, 2009, at approximately 10:30 PM, a man dressed in a dark-colored hooded sweatshirt entered the Buy Low Market in Clark County, Washington, and shot Jose Muro five times. Muro was stocking the Buy Low's walk-in refrigerator when he was shot. He survived. The police did not recover the gun.

Muro and Gasteazoro–Paniagua were best friends but had a falling out when Gasteazoro–Paniagua had an affair with Muro's brother's wife, Nicole Sanchez. Muro called Gasteazoro–Paniagua about an hour before he was shot in response to a text message from Gasteazoro–Paniagua. Although they were no longer friends, Gasteazoro–Paniagua asked Muro if he wanted to meet for a drink; Muro declined, telling Gasteazoro–Paniagua that he was at work.

On January 7, Yakima Police Department officers arrested Gasteazoro–Paniagua in Yakima. Detectives Rick Buckner and Lindsay Schultz of the Clark County Sheriff's Department interviewed Gasteazoro–Paniagua just after midnight at the Yakima Police Department. At Gasteazoro–Paniagua's arraignment on June 10, the State filed a second amended information charging Gasteazoro–Paniagua with attempted first degree murder with a firearm enhancement and a first degree unlawful possession of a firearm charge. RCW 9.41.040(1)(a); RCW 9.94A.533(3), .825. Gasteazoro–Paniagua pleaded not guilty to all charges.

Gasteazoro–Paniagua moved to suppress statements he made to police during the interview with the detectives in Yakima. Following a CrR 3.5 hearing, the trial court found that Gasteazoro–Paniagua had waived his rights to counsel and to silence and concluded that his statements were voluntary and admissible. A jury trial began on June 14, 2010. Gasteazoro–Paniagua stipulated to a previous conviction for a serious offense. On June 17, Gasteazoro–Paniagua moved for mistrial, arguing that one of the investigating officers identified him in the store surveillance video in violation of the court's ruling in limine to exclude police opinion testimony as to his guilt. The trial court denied the motion.

On June 23, Gasteazoro–Paniagua moved to exclude the testimony of T.J., an alleged jailhouse informant. [Court of Appeals footnote: We refer to the witness by his initials to protect his privacy.] The trial court denied the motion. Based on his characterization of T.J. as a jailhouse informant, Gasteazoro–Paniagua proposed a jury instruction that specifically instructed the jury to treat T.J.'s testimony with caution. The trial court declined to give Gasteazoro–Paniagua's proposed instruction. On June 29, a jury found Gasteazoro–Paniagua guilty as charged. On July 8, Gasteazoro–Paniagua filed a CrR 7.6 motion for new trial, asserting that the trial court erred by denying his motion for mistrial and alleging several instances of prosecutorial misconduct. The trial court denied the motion and sentenced Gasteazoro–Paniagua to 429.75 months confinement for the first degree attempted murder conviction, and 89 months for the first degree unlawful possession of a firearm conviction, to be served concurrently.

REPORT AND RECOMMENDATION - 2

Exhibit 2, pp. 2-3.

On appeal, the Washington Court of Appeals affirmed the convictions. Exhibit 2; Exhibits 3-5 (appellate briefs); *see also* Exhibit 8 (Motion to Reconsider); Exhibit 9 (Order Denying Motion for Reconsideration).

Gasteazoro-Paniagua sought review by the Washington Supreme Court. Exhibit 10. The Washington Supreme Court denied review on November 6, 2013. Exhibit 11. The Washington Court of Appeals issued its mandate on December 20, 2013. Exhibit 12.

Gasteazoro-Paniagua then filed a personal restraint petition (PRP) in the Washington Court of Appeals. Exhibits 13-18. The Washington Court of Appeals denied the PRP. Exhibit 19, Unpublished Opinion, No. 47042-0-II. Gasteazoro-Paniagua sought review by the Washington Supreme Court. Exhibit 20. The Commissioner of the Washington Supreme Court denied review. Exhibit 21. Gasteazoro-Paniagua moved to modify the Commissioner's ruling. Exhibit. 22. The Washington Supreme Court denied the motion to modify on September 6, 2017. Exhibit 23. The Washington Court of Appeals issued a certificate of finality on September 13, 2017. Exhibit 24.

Gasteazoro-Paniagua filed a petition for writ of habeas corpus on October 1, 2017. Dkt. 1.

**STANDARD OF REVIEW**

A federal court may grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

REPORT AND RECOMMENDATION - 3

United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

This is a "'highly deferential standard'" that "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). If "'fairminded jurists could disagree' on the correctness of the state court's decision," this Court cannot grant habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). In short, "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn state

REPORT AND RECOMMENDATION - 4

court findings of fact "absent clear and convincing evidence" that they are "objectively

unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards,

a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*,

360 F.3d 1044, 1055 (9th Cir. 2004).

## EXHAUSTION AND PROCEDURAL DEFAULT

The exhaustion of state court remedies is a prerequisite to the granting of a petition for

writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived

explicitly by respondent. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion thus may not be

implied or inferred. A petition can satisfy the exhaustion requirement by providing the highest

state court with a full and fair opportunity to consider all claims before presenting them to the

federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083,

1086 (9th Cir. 1985).

Here, Gasteazoro-Paniagua asserts three grounds for habeas relief:

1. The State Court Admitted Gasteazoro-Paniagua's Custodial Statements in Violation of the Fifth Amendment's Right to Counsel When He Commented that He Would "Just Need to Talk to his Lawyer," but Where the Officer Continued to Question Defendant.
. . .
2. Mr. Gasteazoro-Paniagua Was Denied His Sixth and Fourteenth Amendment Right to Effective Assistance of Counsel When Counsel Failed to Object to Several Improper Arguments.
. . .
3. Mr. Gasteazoro-Paniagua's Right to Confrontation was Violated by the Admission of Testimonial Hearsay.

Dkt. 1, pp. 5, 9, 16.

Gasteazoro-Paniagua fairly presented his first two claims and part of the third to the

Washington Supreme Court and thus exhausted his state court remedies. *See* Exhibits 10, 20. The

State concedes this, explicitly waiving any argument that Gasteazoro-Paniagua failed to exhaust

REPORT AND RECOMMENDATION - 5

these claims. Dkt. 7, pp. 5-6. Accordingly, the Court will review the merits of those claims.

The State asserts that Gasteazoro-Paniagua failed to exhaust part of his third claim: his assertion that testimony by a sheriff's deputy that Gasteazoro-Paniagua was the person in a store surveillance video violated Gasteazoro-Paniagua's rights under the confrontation clause of the Sixth Amendment. The State asserts that Gasteazoro-Paniagua's claim is now barred as procedurally defaulted. Gasteazoro-Paniagua does not respond to this argument in his reply brief. Dkt. 13.

When a state court clearly states that its rejection of a claim rests on a procedural bar, the procedural default doctrine bars the petitioner from asserting the same claim in federal court. *Harris v. Reed*, 489 U.S. 255, 263 (1989). Invited error is one such state procedural bar. *See Leavitt v. Arave*, 383 F.3d 809, 832-33 (9th Cir. 2004)

Gasteazoro-Paniagua argued in his direct appeal that the deputy's testimony that he was the person in the surveillance video violated the Sixth Amendment. Exhibit 3, p. 30 (Gasteazoro-Paniagua brief on direct appeal). The Court of Appeals rejected this argument, holding that the testimony was invited error because "[d]efense counsel elicited, and then elaborated on," that same testimony. Exhibit 2, p. 24. The state court thus relied on a state procedural bar to reject Gasteazoro-Paniagua's claim regarding the deputy's testimony about the surveillance video. Accordingly, that claim should be rejected because it is procedurally barred on habeas review. *See Harris*, 489 U.S. at 263.

REPORT AND RECOMMENDATION - 6

**DISCUSSION**

A.  Fifth Amendment Right to Counsel

The petitioner asserts that the trial court erred because it admitted into evidence statements petitioner made in an interview with police detectives after he invoked his right to speak with an attorney.

Whether a suspect has invoked his right to counsel is an objective inquiry. *Davis v. United States*, 512 U.S. 452, 459 (1994). To invoke the right to counsel under *Miranda*, a suspect must "'at a minimum'" make "'some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). Officers are not required to stop questioning when "a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Davis*, 512 U.S. at 459 (emphasis in original). "Ambiguity means 'admitting more than one interpretation or reference' or 'having a double meaning or reference.'" *Anderson v. Terhune*, 516 F.3d 781, 787 (9th Cir. 2008) (citation omitted). Words like "maybe," "might," or "I think" can indicate ambiguity. *Arnold v. Runnels*, 421 F.3d 859, 865-66 (9th Cir. 2005).

The defendant in *United States v. Davis* said, "Maybe I should talk to a lawyer." 512 U.S. 452, 462 (1994). The lower court found that statement to be ambiguous under the circumstances, and the Supreme Court "s[aw] no reason to disturb that conclusion." *Id.* at 462.

In *Sessoms v. Grounds*, an en banc panel of the Ninth Circuit distinguished *Davis* in holding that the petitioner had unambiguously invoked his right to counsel. 776 F.3d 615 (9th Cir. 2015). The petitioner stated, "'There wouldn't be any possible way that I could have a . . .

REPORT AND RECOMMENDATION - 7

lawyer present while we do this?'" *Id.* at 625. He later said, "'give me a lawyer.'" *Id.* The Ninth Circuit reasoned that the state court had unreasonably applied Supreme Court precedent in analyzing the petitioner's two statements each in isolation. *Id.* Analyzing those statements in context, the court held that the petitioner had unambiguously requested counsel in his second statement. *Id.* at 627.

Most recently, in *Jones v. Harrington*, the Ninth Circuit found that a defendant's statement during an interrogation that "I don't want to talk no more" was unambiguous. 829 F.3d 1128, 1132 (9th Cir. 2016). It thus held that allowing the state to use Jones's post-invocation statements against him, even to argue that his initial invocation was ambiguous, was contrary to clearly established Supreme Court case law. *Id.*

In addition, in *United States v. Bushyhead*, the suspect told the police, "I have nothing to say, I'm going to get the death penalty anyway." 270 F.3d 905 (9th Cir. 2001). The Ninth Circuit found that the trial court's admission of that statement violated the suspect's Fifth Amendment right to silence. *Id.* At 912-13. And in *Hurd v. Terhune*, officers requested that the suspect reenact a shooting. The suspect responded "'I don't want to do that,' 'No,' 'I can't,' and 'I don't want to act it out because that—it's not that clear.'" 619 F.3d 1080, 1089 (9th Cir. 2010). The Ninth Circuit held that "Hurd's responses were objectively unambiguous in context—he repeatedly refused to perform the demonstration in no uncertain terms." *Id.*

In Mr. Gasteazoro-Paniagua's case, the last reasoned state court decision on this issue was the Washington Court of Appeals' affirmance on direct appeal. That court considered the words used by the petitioner during the interview with Detectives Shultz and Buckner in light of the *Davis* standard:

REPORT AND RECOMMENDATION - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

It is undisputed that Gasteazoro–Paniagua made a knowing, voluntary, and intelligent waiver of his rights at the beginning of the interview. But Gasteazoro–Paniagua argues that during the interview, he made an unequivocal request for counsel which required the detectives to immediately stop all questioning until an attorney was provided. During the interview, Buckner stated, "[W]e don't end up here with you in custody unless we've got a probable cause." 8 RP at 88. Gasteazoro–Paniagua responded, "I mean I guess I'll just have to talk to a lawyer about it and, you know, I'll mention that you guys are down here with a story." 8 RP at 88–89.

Our Supreme Court has held that the statement "maybe [I] should contact an attorney" is clearly an equivocal statement, not an unequivocal request. *Radcliffe*, 164 Wash.2d at 907–08, 194 P.3d 250 (citing *Davis*, 512 U.S. at 455, 114 S.Ct. 2350). In contrast, statements such as "I gotta talk to my lawyer" and "I'm gonna need a lawyer because it wasn't me" are unequivocal requests for an attorney. *Nysta*, 168 Wash.App. at 42, 275 P.3d 1162; *Pierce*, 169 Wash.App. at 544–45, 280 P.3d 1158.

Unlike the statements in *Nysta* and *Pierce*, Gasteazoro–Paniagua's statement was not in the present tense and did not refer to his lawyer or any lawyer in particular. Furthermore, "guess" indicates doubt. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1008 (2002) (Guess means to form a judgment without knowledge, conjecture, estimate, surmise.). An indication of doubt cannot be considered an unequivocal request. *Id*. 2494 (Unequivocal means leaving no doubt, expressing only one meaning; expressing finality.); see also *Taylor v. Indiana*, 689 N.E.2d 699, 703 (Ind.1997).

Exhibit 2; *see also,* Exhibit 25, Report of Proceedings (RP) 88-89 (testimony of Det. Buckner) and Ex. 26, at min. 8:00-10:00 (recorded interview between Det. Buckner, Det. Shultz, and Mr. Gasteazoro-Paniagua).

The petitioner cites two cases in support of his contention that the Washington Court of Appeals decision was unreasonable. Dkt. 1, p. 7. Neither case was decided by the United States Supreme Court. In *United States v. Perkins*, 608 F.2d 1064 (5th Cir. 1979), the court did not consider whether the appellant's statement was unequivocal; that case is therefore unhelpful in analyzing the current case. In *Abela v. Martin*, the defendant stated, "'[M]aybe I should talk to an attorney by the name of William Evans.'" 380 F.3d 915, 926 (6th Cir. 2004). In finding this an

REPORT AND RECOMMENDATION - 9

unambiguous request, the court found it determinative that the petitioner named the attorney he wished to speak to and handed an officer that attorney's business card. *Id.* Neither of these factors was present here.

Mr. Gasteazoro-Paniagua further asserts that his statement was unambiguous because he stated what he would say to a lawyer: "that you guys are down here with a story." Dkt. 13, p. 3; Ex. 25, pp. 89, 100; Ex. 7, p. 9. He asserts that this was "an explanatory refusal" like the statement the Ninth Circuit found to be an unambiguous invocation in *Bushyhead. See* 270 F.3d at 913.

The Ninth Circuit held that "[t]he entirety of Bushyhead's statement was an invocation of his right to silence" and concluded that the Fifth Amendment barred the trial court from admitting that statement itself. *Id.* The court did not, however, analyze whether the suspect's statement was an "unambiguous invocation" under the *Davis* line of cases. *See id.*; *United States v. Gomez*, 725 F.3d 1121, 1127 (9th Cir. 2013) (limiting *Bushyhead* and *Hurd v. Terhune* to cases where "the prosecution attempts to use a defendant's 'explanatory refusal' *in its case-in-chief, as affirmative evidence of guilt or consciousness of guilt*"). The analysis in *Bushyhead* is thus of minimal use in this habeas review because it does not apply the relevant "clearly established Federal law." 28 U.S.C. 2254(d)(1).

Gasteazoro-Paniagua also contends that, viewed in context, his use of "I guess" "was simply a deferential way of making his request" to speak to an attorney, similar to the suspect's statements in *Sessoms*. Dkt. 13, pp. 4-5 (citing 776 F.3d at 626-27). The test for whether a defendant has, or has not, unambiguously asked for a lawyer is an objective inquiry. *Davis v. United States*, 512 U.S. 452, 459 (1994). Officers are not required to stop questioning when "a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable

REPORT AND RECOMMENDATION - 10

officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Id.* (emphasis in original). To invoke the right to counsel under *Miranda*, a suspect must "'at a minimum'" make "'some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). Here, a reasonable law enforcement officer, under the circumstances, would not interpret the phrase "I guess" as an unambiguous statement that the defendant presently desires to talk with an attorney. A reasonable officer "would have understood only that the suspect *might* be invoking the right to counsel." *Davis* at 459 (emphasis in original).

The only question before this court is whether the Washington Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law decided by the United States Supreme Court. The Washington Court of Appeals reasonably applied the legal standard announced in *Davis* for determining whether, objectively, the petitioner made an unambiguous request for an attorney. This Court should deny petitioner's request for habeas corpus relief concerning his Fifth Amendment claim.

B.  Ineffective Assistance of Counsel

Mr. Gasteazoro-Paniagua contends that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel failed to object to parts the prosecution's opening and closing arguments, agreed not to call a witness a "liar" in his own closing argument, and elicited certain testimony while cross-examining a witness.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced

REPORT AND RECOMMENDATION - 11

the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Regarding the performance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Regarding prejudice, the defendant must prove there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. In weighing prejudice, a reviewing court "must consider the totality of the evidence before the judge or jury." *Id.* at 695.

Courts apply a "strong presumption" that the performance of counsel "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel has "wide latitude in deciding how best to represent a criminal defendant" and "in making tactical decisions." *Id.* at 688-89. Courts evaluate "[t]he reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986).

In particular, courts must "'indulge a strong presumption'" that trial counsel acted reasonably in not objecting during the prosecutor's closing argument. *United States v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 689). The Ninth Circuit has noted that several strategic reasons can explain such a failure: "the jury may construe their objections to be a sign of desperation or hyper-technicality;" counsel may have "thought the prosecutor was making an argument helpful to his client's case, and simply did not want to distract him;" or counsel may simply have been "polishing his own closing argument." *Id.* at 1448.

The primary question when reviewing a claim of ineffective assistance of counsel under AEDPA is not whether counsel's representation was deficient or the state court erred in its analysis, but whether the state court adjudication *itself* was unreasonable. *Yarborough*, 540 U.S.

at 5. Review of counsel's representation is thus "doubly deferential when it is conducted through the lens of federal habeas." *Id.* at 5-6.

a. <u>Failure to Object to Remarks on Alternative-Suspect Evidence</u>

First, Mr. Gasteazoro-Paniagua asserts that his counsel was ineffective in failing to object when the prosecutor stated in his closing rebuttal argument:

> . . . That's what this case boils down to, who did it. You sat through two weeks of testimony. There's been zero evidence of anybody else who had a motive or the opportunity or the means to commit this crime.
> There's been no alternative theory, no alternative suspect. Jose Muro had no enemies, was not in a dispute, argument, or a fight with anybody other than with the defendant. . . .

Dkt. 9, Respondent's Supplemental Submission of Relevant State Court Record Exhibits 27-46, Report of Proceedings (RP) 1989. Gasteazoro-Paniagua contends that this argument improperly shifted the burden of proof to him by implying that his "failure to present other suspect evidence is proof of guilt." Dkt. 1, p. 13 (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

The Court of Appeals found that the prosecutor's closing argument was not improper. Noting that "it is not misconduct to argue that the evidence does not support the defense theory," the court concluded that the prosecutor did not imply that Gasteazoro-Paniagua had the burden to prove someone else committed the crime. The court found that the prosecutor instead inferred from the evidence at trial that Gasteazoro-Paniagua was the only person with a motive to shoot the victim. Exhibit 2, pp. 28-29 (citing *State v. Russell*, 882 P.2d 747, 785 (Wash. 1994)). Because the prosecutor's comments were not improper, the court concluded, they were not flagrant and ill-intentioned and defense counsel was not ineffective in failing to object to them. Exhibit 2, p. 29.

Mr. Gasteazoro-Paniagua fails to show that the conclusion of the state court with respect

REPORT AND RECOMMENDATION - 13

1  to his ineffective assistance of counsel claim is contrary to, or constitutes an unreasonable

2  application of, federal law as established by the United States Supreme Court. Instead, he

3  reasserts under a de novo standard of review that he received ineffective assistance of counsel.

4  Dkt. 1, pp. 12-16; Dkt. 13, pp. 7-9.

5      The government must prove beyond a reasonable doubt every element of the charged

6  crime, while the defendant does not have to prove his innocence. *Winship*, 397 U.S. at 364;

7  *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979). A prosecutor does not impermissibly shift the

8  burden of proof by "comment[ing] on the defendant's failure to present exculpatory evidence."

9  *Demirdjian v. Gipson*, 832 F.3d 1060, 1071 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 71 (2017);

10  *United States v. Vaandering*, 50 F.3d 696, 701–02 (9th Cir. 1995) (applying plain error

11  standard). "[C]omments intended to highlight the weaknesses of a defendant's case do not shift

12  the burden of proof to the defendant where the prosecutor does not argue that a failure to explain

13  them adequately requires a guilty verdict." *Vaandering*, 50 F.3d at 701–02; *see Demirdjian*, 832

14  F.3d at 1071 ("The jury reasonably could have inferred that—in context—each repetition of [the

15  prosecutor's comment] was intended, like his original statement, merely as comment on the

16  defense's trial tactics and weaknesses in the defense's theory of the case.").

17      In this case, the prosecutor commented on Gasteazoro-Paniagua's failure to present

18  evidence that anyone else had the motive or opportunity to shoot the victim, but he did not assert

19  that this failure required the jury to find Gasteazoro-Paniagua guilty. RP 1989. The Court should

20  therefore reject the petitioner's argument concerning defense counsel's failure to object to the

21  prosecutor's comment during rebuttal closing argument.

REPORT AND RECOMMENDATION - 14

b.  Failure to Object to Closing Argument Concerning Presence of the Defendant in the Courtroom

Second, Gasteazoro-Paniagua asserts that his counsel was also ineffective in failing to object to another statement in closing argument. In arguing that Gasteazoro-Paniagua's testimony should not be believed, the prosecutor stated:

> Plus he's got the advantage of sitting through and listening to all of the testimony from all the witnesses presented to you in the past couple weeks. Then he neatly fills in and completes the story and has an explanation for why things happened and why he wasn't there.

RP 1993. Gasteazoro-Paniagua contends that this argument was improper because under Washington law a prosecutor cannot seek, in closing argument, to penalize a defendant's right to be present, but can only do so in cross examining the defendant. Dkt. 1, pp. 13-14 (citing *State v. Martin*, 171 Wn.2d 521 (Wash. 2011)).

The Court of Appeals found that the prosecutor's argument did not penalize Gasteazoro-Paniagua's right to be present because, at the time of trial, controlling *state* law held that the state does not violate a defendant's right to be present by commenting on the defendant's presence during other witnesses' testimony. Exhibit 2, pp. 29-30 (citing *State v. Miller*, 40 P.3d 692 (Wash. App. 2002); *Portuondo v. Agard*, 529 U.S. 61 (2000)). The court thus concluded that defense counsel was not ineffective in failing to object to the prosecutor's statement. Exhibit 2, pp. 30-31.

The Court must keep in mind that review of an ineffective assistance of counsel claim is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 5-6. The primary question to be considered under AEDPA is not whether counsel's representation was deficient, but whether the state court adjudication *itself* was unreasonable. *Id.* at 5.

REPORT AND RECOMMENDATION - 15

1   Courts must evaluate ineffective assistance from counsel's perspective at the time of trial.

2   *Strickland*, 466 U.S. at 689. Gasteazoro-Paniagua makes no argument that the prosecutor's

3   comments were impermissible at the time they were made, Dkt. 1, pp. 13-14, and the cases cited

4   by the Washington Court of Appeals show that they were not. Moreover, the clearly established

5   United States Supreme Court decision in *Portuondo v. Agard*, 529 U.S. 61 (2000), was

6   considered by the Washington Court of Appeals. Because the state court reasonably applied the

7   applicable federal standard, Mr. Gasteazoro-Paniagua cannot prevail on this claim. *Hall v.*

8   *Allbaugh,* No. CIV-15-203-M, 2017 WL 8220483, Slip Op. at *6, and 2018 WL 1309857 (W.D.

9   Okla. 2017). Accordingly, Gasteazoro-Paniagua's counsel's failure to object could neither have

10   been unreasonable professional conduct nor prejudicial to the outcome of the petitioner's case,

11   and this Court should hold that Mr. Gasteazoro-Paniagua's ineffective assistance claim must fail

12   on this point.

13   c.   Failure to Object to Improper Vouching

14   Third, Gasteazoro-Paniagua asserts that his counsel was ineffective in failing to object

15   when the prosecutor allegedly vouched for a witness. In cross-examining a key witness, Garold

16   Trent Jacobsen, the prosecutor elicited testimony that Jacobsen's agreement with the prosecution

17   in exchange for leniency in his own case required Jacobsen to testify truthfully. RP 1446-48.

18   During a later discussion outside the jury's presence, defense counsel agreed, "I'm not . . . gonna

19   say [Jacobsen]'s a liar" during closing argument. RP 1481.

20   Gasteazoro-Paniagua contends that the prosecutor committed misconduct because

21   Washington law prohibits the State from eliciting testimony that the witness's agreement

22   requires "truthful" testimony. Dkt. 1, p. 14 (citing *State v. Ish*, 241 P.3d 389 (Wash. 2010)). He

REPORT AND RECOMMENDATION - 16

also argues that his trial counsel's agreement not to call Jacobsen "a liar" unreasonably limited

counsel's ability to argue against Jacobsen's credibility.

The Court of Appeals held that even if the prosecutor improperly vouched for Jacobsen's

truthfulness, an instruction could have cured any resulting prejudice. Exhibit 19, pp. 7-9 (denial

of Personal Restraint Petition). The court therefore asked whether "the result of the trial would

likely have differed had defense counsel obtained a curative instruction." Exhibit 19, p. 13. The

court noted that defense counsel impeached Jacobsen "by emphasizing that [he] remembered all

the specifics of his conversation with Gasteazoro-Paniagua, but could not remember what he told

his wife about their conversations." *Id.* The court concluded that the prosecutor's alleged

vouching would therefore "have done little to bolster" Jacobsen's credibility, and defense

counsel's failure to object likely had little effect on the trial's result. *Id.* With respect to the

second question, the court concluded that the prosecutor eliciting Jacobsen's obligation to tell the

truth was not improper under the Washington Supreme Court's *Ish* decision, so any objection

would have been overruled. Exhibit 19, pp. 13-14. The Court of Appeals concluded that because

the trial's result "would not likely have differed" without defense counsel's failure to object to

the prosecutor's questioning, counsel was not ineffective. *Id.*

The court also rejected Gasteazoro-Paniagua's assertion that his counsel acted

unreasonably in agreeing not to call Jacobsen "a liar" in closing, deferring to counsel's legitimate

trial strategy of attempting to "*show* the jury that [Jacobsen] was a liar through his motivation . . .

, rather than just *tell* the jury he was a liar." Exhibit 19, pp. 15-16 (emphasis in original).

These holdings by the state court were not contrary to or an unreasonable application of

established federal law as determined by the United States Supreme Court. As noted above,

reviewing courts must apply "a strong presumption" that defense counsel acted reasonably in his

REPORT AND RECOMMENDATION - 17

trial tactics, and this Court's habeas review is "doubly deferential." *Strickland*, 466 U.S. at 689; *Yarborough*, 540 U.S. at 5-6. Gasteazoro-Paniagua cites no Supreme Court precedent that supports his argument, and none is apparent. Accordingly, this ineffective assistance claim must fail, as well.

d.  Eliciting Prejudicial Testimony

Mr. Gasteazoro-Paniagua also asserts that his counsel was ineffective because he elicited testimony that portrayed Gasteazoro-Paniagua as violent and dangerous. In cross-examining Jacobsen, defense counsel asked several open-ended questions that allowed Jacobsen to imply that Gasteazoro-Paniagua is violent and dangerous. RP 1450-68. First, defense counsel and Jacobsen had this exchange:

> Q: So you made a conscious effort after talking to him a little bit to try and dig information out of him that would be incriminating; is that correct?
> A: Yes.
> Q: You did that for the sole purpose of benefitting from it and dealing with law enforcement; correct?
> A: No.
> Q: What other purpose did you do it for?
> A: Like I said, after talking to him and getting the gist that he was the one who did it, I really didn't feel comfortable, you know, going away for even a day and having the potential of having him around my kids, because they were living with my brother at the time.
> Q: So the reason you decided to do it was so that you could help put him behind bars?
> A: No. To keep my family safe.

RP 1450. Gasteazoro-Paniagua characterizes the next seventeen pages in the transcript as "defense counsel ask[ing] Jacobsen basically to repeat his testimony against Gasteazoro-Paniagua." Dkt. 1, p. 11 (citing RP 1450-67). Then, they had this exchange:

> Q: And part of the reason you are testifying against your friend over here, Mr. Gasteazoro, is because you're going to benefit from it; correct?
> A: Yes.

REPORT AND RECOMMENDATION - 18

Q: But the other part is 'cause you don't want him out on the street –
A: Yes.
Q: - because you're afraid of him.
A: Because I'm worried about my kids and my family.

RP 1468.

Gasteazoro-Paniagua contends that his counsel's questioning and Jacobsen's answers encouraged jurors to use Jacobsen's characterization of him as substantive proof of his guilt.

The Washington Court of Appeals rejected this claim. The court reasoned that Gasteazoro-Paniagua failed to argue the absence of a legitimate trial strategy and so had not overcome the presumption of effective representation. The court also noted that after eliciting Jacobsen's statement that he was "worried about my kids and my family" if Gasteazoro-Paniagua is free, defense counsel's questions immediately emphasized that Jacobsen would receive a sentence of only eight years, rather than 60, because of his testimony against Gasteazoro-Paniagua. The court concluded that it was a legitimate trial tactic to elicit both of Jacobsen's motivations while emphasizing the latter. Exhibit 19, pp. 14-15.

As noted above, reviewing courts give defense counsel great deference in selecting trial tactics. "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 686).

In arguing that the state court's holding was unreasonable, Gasteazoro-Paniagua does not cite any Supreme Court precedent. He points to dicta in a Ninth Circuit opinion that is distinguishable. Dkt. 13, p. 10; *see Tomlin v. Myers*, 30 F.3d 1235, 1239 (9th Cir. 1994) (expressing concern that "hapless inquiry" in cross-examination opened door for prosecution to elicit witness's prior identification of defendant in illegal lineup).

REPORT AND RECOMMENDATION - 19

The Washington Court of Appeals reasonably concluded that perfection is not required, and although defense counsel may have elicited testimony that was slightly damaging to Gasteazoro-Paniagua, counsel did so in the course of impeaching Jacobsen by emphasizing his other motive: to receive a more lenient sentence on his own murder and robbery charges. This was within the range of reasonable tactics that defense counsel could employ. *See Richter*, 562 U.S. at 110 (noting "*Strickland* does not guarantee perfect representation," and "an attorney may not be faulted for a reasonable miscalculation or lack of foresight").

C.  Sixth Amendment Right to Confront Witnesses

Gasteazoro-Paniagua also contends that his Sixth Amendment right to confront witnesses against him was violated at three points during trial:

1.     A sheriff's deputy testified that he could not identify the person in a surveillance video as Gasteazoro-Paniagua, but that "[t]hat's what our investigation . . . led to." RP 601-02.

2.     Two detectives testified about the substance of statements by family members of the victim, Jose Muro. One detective testified that "[b]y talking to various family members at the hospital" the evening of the attack, "we were provided a name of a possible suspect;" and that "[w]e were told that the defendant . . . , Jose Muro, and his brother, Juan Muro, . . . were best friends at one time," but "[t]here had been a disagreement between the three of them" that led to "friction." Exhibit 33 (VRP), pp. 839-40. The other detective testified that she interviewed two ex-girlfriends of Muro's and, without stating what they said, implied that their information led her to suspect that Gasteazoro-Paniagua was the shooter. RP 1647-49.

3.     One of the detectives also testified that, after speaking with Gasteazoro-Paniagua's wife, "[m]y investigation led us" to certain items of evidence. RP 853-54, 859-61.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Testimonial hearsay statements are barred under the confrontation

REPORT AND RECOMMENDATION - 20

clause unless the declarant is unavailable and the defendant had prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 68-89 (2004).

A habeas petitioner is not entitled to relief if a constitutional error is harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). The Supreme Court recognizes two standards for determining whether an error was harmless: The "AEDPA/*Chapman*" test asks whether the state court's harmlessness determination itself was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1); *Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2015) (citing *Chapman v. California*, 386 U.S. 18 (1967)). And the *Brecht* test, which predates AEDPA, asks whether the reviewing Court has "grave doubt" as to whether the error had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Davis*, 135 S.Ct. at 2197-98 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). If the error is harmless under either test, the petitioner's claim must fail. *See Davis*, 135 S. Ct. at 2198-99.

The Court of Appeals found that the trial court's admission of the first statement was invited error. As discussed above, Gasteazoro-Paniagua's claim that he was prejudiced by this first statement is procedurally barred due to invited error. Because a state court clearly stated that its rejection of a claim rested on a procedural bar—in this case the invited error doctrine—the procedural-default doctrine prohibits the petitioner from asserting the same claim in federal court. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Leavitt v. Arave*, 383 F.3d 809, 832-33 (9th Cir. 2004).

The Washington Court of Appeals determined that the trial court erred by allowing into evidence both the second and third sets of statements, but found that the errors were harmless under the constitutional-error standard:

REPORT AND RECOMMENDATION - 21

The challenged statements were relevant to motive and Gasteazoro-Paniagua's behavior after the shooting. The statements did not identify Gasteazoro-Paniagua as the shooter. Furthermore, all the information contained in the belatedly challenged hearsay statements was contained in Gasteazoro-Paniagua's trial testimony. Accordingly, any error based on the admission of the cumulative statements is harmless beyond a reasonable doubt

Exhibit 9, p. 2 (denying Gasteazoro-Paniagua's motion for reconsideration on direct appeal).

On habeas review, Gasteazoro-Paniagua has not shown prejudice under the AEDPA/*Chapman* standard. He makes no argument that the harmlessness determination by the Washington Court of Appeals was "contrary to, or involved an unreasonable application of, clearly established federal law." *See* 28 U.S.C. § 2254(d)(1); *Davis*, 135 S. Ct. at 2197-98. Rather, he contends his case was prejudiced by the testimony – an argument which is entirely conclusory: Gasteazoro-Paniagua states that he "was harmed because the evidence certainly contributed to the verdict in this case." Dkt. 1, p. 19. Gasteazoro-Paniagua has not established that the state court's harmlessness determination was unreasonable.

D.  New Evidence

Mr. Gasteazoro-Paniagua asserts in his reply that this Court should conduct an evidentiary hearing. Dkt. 13, p. 6. Even assuming that Gasteazoro-Paniagua properly raises this issue (not having raised it in his petition, Dkt. 1), the Court should conclude that AEDPA precludes any new evidence.

In deciding under AEDPA whether this Court can consider evidence that was not presented to the state courts, different rules apply depending on whether the state courts adjudicated the particular claim on the merits.

Where, as here, the state courts adjudicated the claim on the merits, this Court's "review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (applying 28 U.S.C. § 2254(d)(1)). This rule "effectively precludes federal evidentiary hearings" in determining whether the state court's decision was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1). *Gulbrandson v. Ryan*, 738 F.3d 976, 993-94 (9th Cir. 2013). If the petitioner satisfies § 2254(d)(1) based solely on the state court record, however, then the habeas court may consider newly presented evidence in reviewing the claim de novo. *Crittenden v. Chappell*, 804 F.3d 998, 1010 (9th Cir. 2015)

Here, Gasteazoro-Paniagua seeks a hearing to probe his trial counsel's reasons for failing to object to the allegedly improper testimony and argument discussed above. Because the state court adjudicated Gasteazoro-Paniagua's ineffective assistance claims on the merits, § 2254(d)(1) "effectively precludes" an evidentiary hearing in federal court unless Gasteazoro-Paniagua shows based on the state court record that the state court's decision was contrary to or an unreasonable application of federal law. *See Gulbrandson*, 738 F.3d at 993 (citing *Pinholster*, 563 U.S. at 181). As discussed above, Gasteazoro-Paniagua has not shown that the state court's rejection of his ineffective assistance claim met this standard. The Court should therefore deny Gasteazoro-Paniagua's request to introduce new evidence.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief may appeal a district court's dismissal of his § 2254 motion only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). Gasteazoro-Paniagua is not entitled to a

REPORT AND RECOMMENDATION - 23

COA because he has not shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). Gasteazoro-Paniagua should address whether a COA should be issued in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

Based on the foregoing, the Court recommends that Mr. Gasteazoro-Paniagua's habeas petition be **denied and his claims dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 29, 2018**, as noted in the caption.

**DATED** this 11th day of June, 2018.

*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24